**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| JASON LEE NIEMAN, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:12-CV-02433-L |
| | § | |
| KEITH HALE, *et al.*, | § | Judge: Hon. Sam A. Lindsay |
| | § | |
| | | Magistrate Judge:  Hon. David L. Horan |
| Defendants | § | |

**DEFENDANT HALE'S MOTION TO ALTER OR AMEND THE COURT'S JUDGMENT
GRANTING PLAINTIFF NIEMAN VOLUNTARY DISMISSAL WITHOUT
PREJUDICE [DKT. NO. 191] IN ACCORD WITH RULE 59(e)**

Defendants Keith Hale and Insurance Search Group (Hale and Insurance Search Group shall be referenced collectively herein, as "Hale", or "Defendant Hale") come to oppose the Court's recent *Memorandum Opinion and Order* (the "Order") [Dkt. No. 191] of June 18, 2015, granting Plaintiff Jason Nieman ("Nieman", or "Plaintiff Nieman") voluntary dismissal without prejudice according to FED. R. CIV. P. 41(a)(2). [Dkt. No. 191]. Hale, respectfully, moves to amend the judgment according to FED. R. CIV. P. 59(e), from Voluntary Dismissal without Prejudice to Sua Sponte Summary Judgment with Prejudice in Defendant Hale's Favor or, in the alternative, Dismissal with Prejudice in Defendant Hale's Favor to include payment of all attorney fees and reimbursement for all Hale's *pro se* work.  Additionally Hale will show new evidence obtained after the close of discovery, a lack of facts supporting a Title VII charge, and crucial questions as to law.

**I. ADMINISTRATIVE PROCEDURE**

1

FED. R. CIV. P. 59(e) Federal Rule of Civil Procedure 59(e) provides that a party may move to alter or amend a judgment within 28 days after entry of the judgment. To prevail on a motion to alter or amend judgment under Rule 59(e), the moving party must show (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) a manifest error of law or fact. *See Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). A Rule 59(e) motion is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc., 367 F.3d 473, 479 (5th Cir. 2004)*. Although courts have "considerable discretion" to grant or to deny a Rule 59(e) motion, they use the "extraordinary remedy" under Rule 59(e) "sparingly." *Id.* at 479, 483. When considering a motion to alter or amend judgment, "[t]he court must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." A district court has "considerable discretion" to grant or deny a motion under Rule 59(e). *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). *See King v. LIFE SCHOOL*, Civil Action No. 3: 10-CV-0042-BH (N.D. Tex. May 21, 2012). The decision whether an action should be dismissed under Rule 41(a)(2) is within the sound discretion of the court. *Schwarz v. Folloder*, 767 F.2d 125,129 (5th Cir. 1985) (citing *La-Tex Supply Co. v. Fruehauf Trailer Division*, 444 F.2d 1366, 1368 (5th Cir. 1971)). Notwithstanding this discretion, voluntary dismissals "should be freely granted unless the non-moving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Elbaor*, 279 F.3d at 317 (citing *Manshack v. Southwestern Elec. Power Co.*, 915 F.2d 172, 174 (5th Cir. 1990)). The primary consideration is whether the non-movant would be prejudiced or unfairly affected. *Id.* at 317-18.

2

A district court can vacate a voluntary dismissal under FRCP 60(b). The 5th Circuit considered this issue, and agreed with other federal circuits in holding that voluntary dismissals can be vacated. The 5th Circuit affirmed the district court's decision. Vacatur under FRCP 60(b) is limited to "final judgments, orders and proceedings." Though a voluntary dismissal without prejudice is not completely "final" because a plaintiff can re-file the dismissed complaint, the 5th Circuit Court reasoned that because a voluntary dismissal terminates the case unless the plaintiff acts to reinstate it, it is for all practical purposes "final." "Because we find that a voluntary dismissal without prejudice is a 'final proceeding' under Rule 60(b) and the district court did not abuse its discretion in dismissing this case, we AFFIRM." *Yesh v. Lakewood Church*, No. 12-20520, 2013 WL 4103601 (5th Cir. Aug. 14, 2013).

## II. UPON THE COURT'S CONSIDERATION, HALE RESPECTFULLY SEEKS AMENDMENT OF ITS RULE 41(a)(2) ORDER [191] TO SUA SPONTE SUMMARY JUDGMENT WITH PREJUDICE IN DEFENDANT HALE'S FAVOR

Plaintiff Nieman demands an award of $1,000,001.00, and demands a jury trial in his 42 U.S.C. § 2000e retaliation lawsuit against Defendant Hale. Nieman filed the first complaint at law on July 19, 2012. [3]. The operative complaint , Nieman's 2nd Amended Complaint (the "Active Complaint") was filed on August 2, 2013. [35]. Hale answered Nieman's Complaint on August 19, 2013. [41]. Discovery was conducted. Summary Judgment *sua sponte* was ordered on April 21, 2014. [121]. The Court reversed its Summary Judgment Order on July 7, 2014. [127]. Nieman moved for Summary Judgment on October 29, 2014. [164]. Hale moved for Summary Judgment on October 30, 2014. [166]. The Court set the case for trial and ruled on the Scheduling Order on April 9, 2015. [175]. The Magistrate Judge entered his "Report" on May 8,

2015. [179]. The Court denied Plaintiff Nieman's and Defendant Hale's summary judgment motions. The Court accepted the Magistrate Judge's Report on June 3, 2015. [185 & 186]. Nieman moved for voluntary dismissal without prejudice on June 17, 2015. [190]. The court granted Nieman's motion for voluntary dismissal on June 18, 2015. [191]. In an arguably prejudiced action, the Court did not leave time for Hale to respond to Nieman's Motion, [190].

Hale, respectfully, will show the submission of new evidence not previously available and manifest errors of law or fact according to Rule 59(e). *See Schiller v. Physicians Res. Grp., Inc.*, as extant in the Court's *Memorandum Opinion and Order* (the "Order") of June 18, 2015. [191]. The Court ordered a voluntary dismissal without prejudice in accord with Rule 41(a)(2) in favor of Nieman. [190, 191]. According to Rule 41, courts have found plain legal prejudice when the plaintiff moves to dismiss the case at a late stage of the proceedings, or after the defendant has exerted significant time and effort in defending his cause, or if the plaintiff is attempting to avoid an imminent adverse ruling. The facts, or lack thereof, and the statutes claimed by Nieman to have been violated by Hale in 42 U.S.C. § 2000e et seq. ("Title VII") will be seen as deficient and errant, and thus the Court's Order [191], respectfully, is equally deficient and errant, and requires alteration or amendment.

### III. WHY A VOLUNTARY DISMISSAL WITHOUT PREJUDICE IN THE INSTANT CASE IS A MANIFEST ERROR OF LAW AND FACT

**A.     Defendant Hale has exerted over three years of inordinate effort, including 18 months of *pro se* work to defend himself against Nieman's regulatory and litigation tactics.**

Nieman filed his Motion for Voluntary Dismissal Without Prejudice (the "Motion") [190], on June 17, 2015, nearly ***three years after*** Nieman filed his suit [2], on July 19, 2012.  If a

plaintiff, like Nieman,  "fails to seek dismissal until a late stage of trial, after the defendant has exerted significant time and effort, then a court may, in its discretion, refuse to grant a voluntary dismissal." *Davis v. Huskipower Outdoor Equip. Corp.*, 936 F.2d 193, 199 (5th Cir. 1991). It is clear that Hale has "exerted significant time and effort", years, not months, even pre-dating the July 19, 2012 in defending himself against Nieman's serial litigation.

A much more innocuous case, possessing only "more than a year" time frame instead of the three year context of the instant case, helps here. In affirming the district court's ruling denying a motion for voluntary dismissal without prejudice, the 5th Circuit held,

> "*The Davises moved to dismiss this case without prejudice more than a year after the case was removed to federal court. They filed their motion after months of filing pleadings, attending conferences, and submitting memoranda. Moreover, they filed their motion after the magistrate had considered the case and issued a comprehensive recommendation that was adverse to their position. Based on the record before us, we do not believe that the district judge abused his discretion in denying the motion for voluntary dismissal without prejudice.*" Davis v. Huskipower Outdoor Equip. Co., 936 F.2d 199 (5th Cir. 1991).

Known to the Court, are the facts, history, and chronology of Nieman's pleadings, including multiple motions for sanctions, and several attempts to persuade the Court to waive Hale's privilege protections. The 5th Circuit ruling in *Davis v. Huskipower* shows that court tolerated far less "time and effort".

At the discretion of this Court, Nieman has been granted much greater latitude. [191]. The Court's ruling [191] in favor of Nieman's Motion after three years of regulatory and litigation effort, respectfully, seems to ignore the principles of FED. R. CIV. P. 41(a). Since this case is nearly two years beyond Hale's Answer of August 19, 2013 [41], over one year beyond the Court's Order for Summary Judgment on April 21, 2014 [121] and its reversal of the same on

5

July 7, 2014 [127], over eight months past the parties' respective motions for summary judgment [164, October 29, 2014] [166, October 30, 2014], and since the Court set the case for trial and ruled on the Scheduling Order [175, April 9, 2015], consequently the Court possesses "considerable discretion" to grant or deny a motion under Rule 59(e). *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993).

Moreover, in January of 2014, Hale was forced to neglect his business in order to proceed *pro se* and has been forced to extend extensive, necessary effort to defend himself against Nieman's unsupported and factless litigation. The Court, using its discretion, is authorized to vacate its Order [191] granting Nieman Voluntary Dismissal Without Prejudice given the three years of active litigation and the inordinate effort required of Hale to respond to Nieman's plethoric pleadings.

**B) Nieman's Case is at a late stage with trial looming.**

In *Davis v. Huskipower*, the 5th Circuit defined "late stage" in terms of "months" in affirming the district judge's ruling of denying the Davises' Rule 41 motion. Reviewing the events of the instant case, from its inception on July 19, 2012 to the Court's Motion granting Voluntary Dismissal Without Prejudice on June 18, 2015, it appears that Nieman's case has exceeded the equitable and discretionary elements for a court to grant voluntary dismissal. The Court set the case for trial and ruled on the Scheduling Order on April 9, 2015. [175]. The facts evidence that the instant case is, verily, at a late stage. The Court set the case for trial on the Court's four-week docket beginning August 3, 2015 on April 9, 2015. (175 at Page ID 4132). A pre-trial conference was set for July 30, 2015 in Dallas, Texas. (175 at Page ID 4136). In another case, the 5th Circuit has ruled on the error of late stage dismissals: "Plain legal prejudice may

occur when the plaintiff moves to dismiss a suit at a late stage of the proceedings . . ." *Harris v.*
*Devon Energy, No. 12-40137 (5th Cir. 2012)*. The instant case is three years old and at the trial
stage. According to these facts and law, the Court, using its discretion, may vacate its Order
granting Nieman Voluntary Dismissal Without Prejudice.

**C) Nieman's inadequate explanations accepted by the Court to grant Nieman's Motion**

With regard to Nieman's explanations in moving for a Rule 41(a)(2) dismissal, the 5th
Circuit help here: "In exercising [its] discretion [to grant or deny a Rule 41(a)(2) dismissal], a
court should consider factors such as whether the party has presented a proper explanation for its
desire to dismiss ..."); *Phillips USA, Inc. v. Allflex USA, Inc., 77 F.3d 354, 358 (10th Cir.1996)*
*(same); Zagano v. Fordham Univ., 900 F.2d 12, 14 (2d Cir.1990) (same). Elbaor v. Tripath*
*Imaging, Inc., 279 F. 3d 314 (5th Cir. 2002)."* Nieman has not met this 5th Circuit standard.

**1) Inconvenience getting to the St. Louis airport, and his wife's fitness seminar**
**preclude his attendance at the pre-trial conference**:

On April 16, 2015, Nieman put forth limitations as to his availability, reasoning
that his distance from the airport in St. Louis, and his need to care for his children in
his wife's absence precluded him accommodating the Court's schedule. Nieman
requested attendance by electronic means. (176 at Page ID 4140, 4141). On June 3,
2015, The Court disagreed, and did not countenance his reasoning. Court ruled that
the "parties must therefore attend the pretrial conference in person. Accordingly,
Plaintiff's request to attend the pretrial conference by telephone or video is denied."
(186 at Page ID 4264). Hale suggests that [191], in effect, grants Nieman's request to
not attend the pre-trial conference by vacating [186] and canceling the trial altogether.

Reversing the court's plan to dismiss for failure to prosecute is plain legal prejudice. (*Manshack v. Southwestern Elec. Power Co.,* 915 F.2d 172, 174 (5th Cir. 1990)). The primary consideration is whether the non-movant would be prejudiced or unfairly affected.)

2) **Nieman's unsupported legal speculations as to his certain victory at trial serving as the most equitable conclusion in the context of the Court's 41(a)(2) Order [191]**

Nieman opines,

> *"…Plaintiff has no doubt that he would prevail at trial against the Defendants and anticipates he would receive a monetary judgment as well as likely injunctive relief against Defendants Hale and ISG…"*
> (190 at Page ID 4290).

Nieman's argument does not hold water in substantiating his "belief that a voluntary dismissal without prejudice, with leave to refile, is the most equitable action for the Court to take in light of all circumstances." (*Id.* at Page ID 4287). It seems to Hale that the certainty of Nieman vanquishing Hale at trial, who is certain to be lying about his financial condition according to Nieman, would be akin to picking "low-hanging fruit".  Why abandon three years of litigation and the $10,000.00 of expenses he claims to have expended in this litigation with such a favorable outcome so close at hand? Nieman's tortured logic provides an inadequate explanation justifying voluntary dismissal, and may indicate pretext. The duty of the Court is to express a high level of discretion in granting or denying a Rule 41(a)(2) motion.

3) **Nieman is inconvenienced because he has obtained new employment in Florida; travel and a lack of accrued vacation time preclude his personal appearance at pre-trial conference and trial.**

Nieman claims to have experienced a recent job change. Ostensibly, this new employment in Florida (travel distance, lack of vacation time) will not allow for his personal appearance for the pre-trial conference, or trial in accord with the Court's scheduling order.  Nieman cites this as "a reason for the Court to reconsider its standing order to attend the pre-trial conference in person". (*Id*. at Page ID 4292). Nieman continues to seek the favor and protection of the Court in his Motion based upon his convenience and comforts, relocation, and a new job . The Court has denied this reasoning previously. [186 at Page ID 4264]. The 5th Circuit seems not receptive to Nieman's reasoning extant in his motion [190].  However, the Court seems to have reversed its earlier rulings by granting Nieman's favor, now, through voluntary dismissal without prejudice. Now Nieman will not need to attend the pre-trial conference or trial, at all.

 *"Upon a plaintiff's motion to dismiss without prejudice the equities of the plaintiff are not a subject for consideration under the rule. The terms and conditions which the court may impose are for the protection of the rights of the defendant." Skinner Eddy Corp.*, 265 U.S. at page 93, 44 S.Ct. at page 447, 68 L.Ed. 912.

Nieman has not given proper explanations justifying a Motion for Voluntary Dismissal Without Prejudice. Nieman's obfuscations distracted the Court from the facts and chronology of his extended and drawn out litigation, ready for trial imminently. The Court possesses the authority coupled with its discretion, to amend its previous judgment on the basis of Nieman's inadequate explanations for voluntary

dismissal without prejudice, and with the apparent error in law in granting Nieman's motion. [190] [191].

## D) The Court grants Nieman's Motion allowing Nieman to avoid an imminent adverse ruling in this Case

The recent demise of Nieman's meritless lawsuit against Hale in Illinois, and the instant case's dependence on the Illinois Action give pause to Nieman when considering an adverse conclusion. Nieman does not wish to hazard Hale prevailing . The Northern District of Texas has ruled on this aspect of Rule 41(a)(2). Essentially, "[o]utright dismissal should be refused . . . when a plaintiff seeks to circumvent an expected adverse result." *Radiant Tech. Corp. v. Electrovert USA Corp.*, 122 F.R.D. 201, 203 (N.D. Tex. 1988) (Fitzwater, J.)."   See *Bramlett v. Medical Protective* 3:09-CV-1596-D, (N.D. Tex. 2010).

Nieman's escape plan:

> "*Rather than having the Court dismiss the action for failure to prosecute, and have Defendant Hale attempt to try and claim prevailing party status, Plaintiff believes that a voluntary dismissal without prejudice, with leave to refile, is the most equitable action for the Court to take in light of all circumstances.*"
> (190 at Page ID 4287).

Nieman requests of the court protection from the Court's promise to dismiss the action for failure to prosecute AND requests that the court keep Hale from attempting to try and claim prevailing party status.  These are both imminent adverse rulings that the court promised, but in plain legal prejudice have reversed and granted Voluntary Dismissal without Prejudice. "Plain legal prejudice may occur when the plaintiff moves to dismiss a suit at a late stage of the proceedings or seeks to avoid an imminent adverse ruling in the case, or where a

subsequent refiling of the suit would deprive the defendant of a limitations defense."

Harris v. Devon Energy, No. 12-40137 (5th Cir. 2012).


**E) The Court grants Nieman's Motion and allows Nieman to avoid another adverse ruling in his serial litigation against Hale, thus prejudicing Hale**

Nieman's motion for Voluntary Dismissal without prejudice may be an indication of Nieman's fear of an adverse ruling in the instant case, which would result in the continued unraveling of his serial litigations against Hale.

1) ***Nieman v. Hale*, the "Illinois Action"**, 11-L-333, 10th Cir., County of Peoria, Ill.,  was dismissed with prejudice in Hale's favor on April 13, 2015. All charges were dismissed with prejudice, including of the IHRA 775 ILCS 5/. This specific human rights charge against Hale, serves as the foundation of Nieman's 2nd Amended Complaint, a Title VII retaliation lawsuit. The Illinois Court ruled that Nieman erred in his interpretation of law, and failed to plead any facts. (Transcript entered as Dkt. 172 App'x)

2) ***Nieman v. Hale, et al.*** the "3rd Party Collection Action", 13-LM-686, 10th Cir., County of Peoria, Ill., dismissed in Hale's favor on May 2, 2014. Nieman, acting as an attorney, filed suit against Hale attempting to collect money from Hale in behalf of a third party for wages allegedly garnished from Nieman through his employer. Nieman admitted that his wages were not garnished, "as no funds were withheld from him".  (*See* 144-2 Page ID 3440). Even though these events have been settled, Nieman presses on to extort these monies from Hale. Nieman,

relentlessly, declared this closed court case as a topic to be probed with a called witness at trial. (190-2 Page ID 4296). The case was tried, relief denied, dismissed, and closed on May 2, 2014. It is a manifest error of law and fact for this to be a planned topic at trial in the instant case.

3) ***Nieman v. Hale***, re-styled from *Nieman v. RLI, et al*., 3:14-mc-00038-B-BN, U.S. N.D., Tex., filed April 10, 2014, is pending. This is Nieman's attempt to collect on a judgment in the Illinois Action (11-L-333) that was still active in the State Court of Illinois until April 13, 2015.  The case was dismissed with prejudice in Hale's favor, with no award to Nieman. Hale argued that law and authorities disfavor an effort such as Nieman's. See 28 U.S.C. § 1963. Nieman stretches the Court beyond the context the rules applying to two federal district courts. He asks the federal court of the Northern District of Texas to collect on an active case in Illinois State Court.  A highly educated, qualified and credentialed litigation manager, as Nieman avers himself to be, knows better. (35 at Page ID 686 ¶ 8).

4) **Nieman commits identity theft against Hale, Hale's wife and untold numbers of Hale's family**. Moreover, Neman has obtained and, likely, still possesses the sensitive identifying information of Hale, Hale's wife and untold numbers of Hale's family members for the stated purpose of procuring money from Hale. (***Nieman v. Hale***, re-styled from *Nieman v. RLI, et al*., 3:14-mc-00038-B-BN, U.S. N.D., Tex. Doc, No. 6 at Page ID 23-24) This is a clear violation of law in Texas. (The Business and Commerce Code, Title 11, Subtitle B, Chapter 521, Identity Theft Enforcement and Protection Act § 521). Nieman may have

familiarized himself with TEX PE. CODE ANN. § 32.51. If he has, then his request for a voluntary dismissal without prejudice would fall further into disrepute. Nieman is fleeing from possible serious repercussions. Hale is still pursuing remedies for this wrong committed against Hale and his family. If Nieman is allowed to flee from the fabrications, speculations, and calumnies extant in his 2nd Amended Complaint and pleadings inextricably tied to the Title VII retaliation element, then Hale is prejudiced by forfeiting relief for a significant portion of Nieman's serial litigation against Hale. Moreover, the pursuit and relief sought is negatively impacted in the other litigations, by the Court's ruling in favor of Nieman in the instant case. [191]. In the context of three other lawsuits in play with potential recovery, in addition to the problem of identity theft, Hale's interests have not been protected by the Court's Order [191]. "Plain legal prejudice may occur when the plaintiff moves to dismiss a suit at a late stage of the proceedings or seeks to avoid an imminent adverse ruling in the case [or any of Nieman's cases against Hale], or where a subsequent refiling of the suit would deprive the defendant of a limitations defense." *Harris v. Devon Energy,* 2012 WL 6082415; No.12-40137 (5th Cir. Dec.7, 2012).

**F) The Court grants Nieman's Motion that prevents Hale from resolving the charges and demonstrated plain legal prejudice towards defendant in the record.**

    1) Nieman, through the agency of a 41(b)(2) motion and this Court's Order [191], will prevent an adjudication of the instant case on the merits. Consequently, this lets Nieman walk away, unscathed, from three years of baseless and harassing litigation he

directed at Hale. On the contrary, Hale, the non-movant will be prejudiced. A 41(b)(2) dismissal without prejudice treats three difficult years, deleterious to Hale's business, and destructive to his financial status, ***as if those three years never happened***. "The dismissal of an action without prejudice leaves the parties as though the action had never been brought." *See Bonneville Assocs. Ltd. P'ship v. Barram*, 165 F.3d 1360, 1364 (Fed.Cir.1999) (stating that "[t]he rule in the federal courts is that `[t]he effect of a voluntary dismissal without prejudice pursuant to [Federal Rule of Civil Procedure] 41(a) is to render the proceedings a nullity and leave the parties as if the action had never been brought.'" (quoting *Williams v. Clarke*, 82 F.3d 270, 273 (8th Cir.1996))); *see also 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* § 2367, at 321 (2d ed. 1995) . In other words, Nieman's voluntary dismissal without prejudice leaves Nieman unblemished, as if his action never had been filed, and as if Hale had incurred no harm. Contrarily, Hale loses the recourse to seek relief for his losses incurred solely at the hands of Nieman in the instant case. These losses, in addition to fiscal, include harm to reputation. Because the record will stand as it reads, replete with deceptions, unfounded suppositions, twisted facts, framed fiction, and outright lies concerning Hale, the prejudice against Hale remains extreme. The Court, with discretion, may rule to amend its previous judgment with this apparent error in law.

## G) NEW EVIDENCE:  The Resolution of the Illinois Action

The requisite Title VII elements in Nieman's Complaint have never existed. The Court expressed great leniency toward Nieman in allowing  Nieman's live pleading, his 2nd

Amended Complaint is a Title VII lawsuit that only possesses one of the requisite participants, a plaintiff, Nieman. Nieman chose to abandon Republic, the employer, as a defendant. Nieman chose to abandon the personnel recruiter who represented Nieman to Republic. Nieman interviewed with Republic. Nieman, apparently, was not hired for legal, non-discriminatory, non-retaliatory reasons. Nieman accepted Republic's reasons for not considering Nieman for employment. Nieman admitted that, he experienced no adverse employment action. Nieman admitted that he experienced not harm or injury. Nieman admitted that Hale was not involved in any way in Nieman's candidate process with Republic.  (101-1 Page ID 2453, 2454, 2455, 2500, 2501, 2502) (109 Page ID 2586 ¶ 2 et seq.)(121 at Page ID 2640, et seq.)

**G) The Court's application of certain authorities does not apply in the present case**

The Court cited an authority that, respectfully, seems to not apply to the instant context. "[T]he mere prospect of a second lawsuit is not enough prejudice to a defendant to warrant denial of a motion to dismiss without prejudice." *United States ex rel. Doe v. Dow Chem. Co.*, 343F.3d 325, 330 (5th Cir. 2003)." The Court understands that Hale has been Nieman's litigation pawn in at least **_four_** lawsuits already. The prospect of a **_fifth lawsuit_**, and any additional that Nieman chooses to pursue against Hale, certainly provides the Court with ample reason to vacate its order of voluntary dismissal without prejudice.

**H) Defendant Hale has expended considerable financial resources, including *pro se* responsibility since January of 2014**.

This prejudice against Hale with regard to the effects of a voluntary dismissal without prejudice ignores the over $17,000.00 in attorney fees paid by Hale and $35,000.00 in outstanding debt to his attorney in the instant case alone. Moreover, Hale has significantly neglected his business since being forced into the *pro se* context. Hale's time spent in responding to Nieman's harassing and baseless pleadings since January of 2014 deserves full compensation in the context of legal fees. All this is lost to Hale in the Court's ruling [191]. "**The parties shall bear their own costs of this suit**; *however, if Plaintiff files another action asserting the same or similar claims against Defendants **based on the facts of this case**, the court, in the interest of justice, will require Plaintiff to pay **all or part** of the attorney's fees and costs that Defendants **reasonably** incurred in this action. Plaintiff will not be allowed to proceed with a new action until such attorney's fees and costs, **as the court determines**, are paid. See Fed. R. Civ. P. 41(d). Further, if Plaintiff files another asserting the same or similar claims against Defendants **based on the facts of this case** and dismisses that action, such dismissal will operate as an adjudication on the merits under Rule 41(a)(1)(B).*" [Dkt. No. 191 at 4]. (**emphasis added**). Given the terminology of the Court's Order [191], there is considerable flexibility for the Court to award Hale nothing in the event of a fifth lawsuit brought by Nieman against Hale. This order affects only this Court. The Court is aware from Nieman's pleadings that Nieman has sued Hale in at least three state courts in Illinois, and two federal courts in Illinois. Moreover, "The rule has long prevailed in both law and equity that a plaintiff may dismiss his case without prejudice only by payment of the costs and

when the defendant will not be subjected thereby to some plain legal prejudice beyond the incidental annoyance (as distinguished from prejudice) of a second litigation upon the same subject matter." *Skinner Eddy Corp., 265 U.S. 86,93, 44 S.Ct. 446, 68 L.Ed. 912*. "When considering a dismissal without prejudice, the court should keep in mind the interests of the defendant, for it is his position which should be protected." 9 Wright & Miller, Federal Practice & Procedure: Civil, §§ 2362, 2364, at 149, 165 (1971). *Milton Lecompte v. Mr. Chip, Inc*., 528 F.2d 601 (5th Cir. 1976).

Respectfully, based on the foregoing, the new evidences of the conclusion of the Illinois Action resolved completely in Hale's favor, and apparent manifest errors of law or fact related to the Court's Order ruling in favor of Plaintiff Nieman's voluntary dismissal without prejudice (Rule 41(a)(2)), Defendant Hale requests that the Court vacate its Order under Rule 60(b), and enter a *sua sponte* summary judgment with prejudice in Hale's favor.

## IV. WHY A VOLUNTARY DISMISSAL WITHOUT PREJUDICE IN THE INSTANT CASE IS PLAIN LEGAL PREJUDICE AGAINST DEFENDANT HALE

"Upon a finding of plain legal prejudice, courts may either deny the motion outright or "craft conditions that will cure the prejudice". *In re FEMA Trailer Formaldahyde Products Liab. Litig*., 628 F.3d at 163 (quoting *Elbaor, 279 F.3d at 317-18*). Curative conditions prevent unfair prejudice to the other side. *Id*. Courts "must be careful to craft conditions that are not overbroad." *Elbaor, 279 F.3d at 320*. Dismissal with prejudice is one option. *In re FEMA Trailer Formaldahyde Products Liab. Litig., 628 F.3d at 163*. One of the curative conditions most often

imposed is the assessment of the fees and costs of the dismissed defendant. *Mortgage Guar. Ins. Corp. v. Richard Carlyon Co.*, 904 F.2d 298, 300 (5th Cir. 1990) (affirming assessment of fees as a curative condition where motion to dismiss was filed on the first day of trial) (citing *LeCompte v. Mr. Chip, Inc.*, 528 F. 2d 601, 603 (5th Cir. 1976)). *Diallo v. CELESTICA CORP.*, Civil Action No. 3: 10-CV-1513-M (BH) (N.D. Tex. Aug. 19, 2013).

**A) The Court is ruling that, based on Nieman's Title VII Complaint, Hale must work with Nieman or he may, rightfully, suffer the potential of litigation .**

The Magistrate Judge's "Report" [179] contains the following passage:

> "But a plaintiff need not enjoy working with his employer or employment agency to establish that he suffered an adverse employment action. *See Burlington*, 548 U.S. at 68-69. In fact, it seems fair to expect that at least some, if not many, Title VII plaintiffs have less than harmonious relationships with their employers or former employers. Consequently, a reasonable jury could find that an applicant such as Plaintiff suffered an adverse employment action by a recruiter's refusal to refer him to a job opportunity even if the applicant does not hold the recruiter in high esteem." (179 Page ID 4172)

First, *Burlington* does not contemplate, nor does Title VII, the bare case that is Nieman's Complaint. First, Hale is not an employer. Second, Hale is not under contract working for an employer as a contractor. Third, as a contingency recruiter, the employer does not control Hale's time, provide resources such an office, just as Cyndi Shelton Republic swore in her affidavit. (101-1 *Supra)* Finally, Shelton swore that Republic had no relationship with Hale during Nieman's candidacy with Republic. (*Id.*)

The Court is unable to cite law, authorities, or statute within Title VII that would consider Hale violative of Title VII in the event that generated Nieman's fictional Complaint. That one event is that an independent personnel recruiter did not answer an

18

email. Hale receives a substantial number of emails each week that are not answered for various legal non-discriminatory reasons.

Hale attempted to call up the *Burllington* citation, but was unable to do so. Hale struggles to accept that the interpretation and application of *Burlington* in the passage cited by the Court [179] relates accurately to the instant case. The Court cited no authorities that would substantiate that an independent personnel recruiter, unattached to an employer is in violation of Title VII because he did not answer an email.

It is plain legal prejudice of the Court to compel Hale to answer an email, especially one that possessed a cover letter that demanded that Hale jump through hoops for him, and then to receive a follow up note a few days later that threatens Hale with regulatory activity and litigation if he does not present his resume to the job opportunity posted on Hale's web site. Hale cannot find an affirmative ruling in that context. Hale must work with Nieman.  No laws cited. No cases referred. No contract referenced that constrains Hale to represent Nieman. An independent, sole proprietor who has been treated unprofessionally in the past and greeted with a query letter for a job opportunity that is rude at best, even extortive (123, App'x 45-50). (get me an interview or I sue) need not answer such an email.....

Additionally, Hale contends that the citation of *See Burlington*, 548 U.S. at 68-69 is plain legal prejudice, as well.  Does *Burlington* contemplate independent contingency personnel recruiters, like Hale, separate from an employer for whom the recruiter is working? Such recruiters have no contract with the candidates and merely contingency contracts with companies or other recruiters; no ability to hire – or even to force a

19

company to consider any candidates – as Nieman demands of Hale in his query
letter/email.

Trial seems inappropriate as well.  Nieman's Complaint is so far-fetched that a jury
would be asked to determine in what circumstance any citizen, like Plaintiff Nieman is
able to demand of another citizen, like Defendant Hale, to answer emails. Again, a jury
would be asked to determine in what circumstance any citizen, like Plaintiff Nieman is
able to demand of another citizen, like the Defendants, that he must work for him. This,
instead, is appropriate for a judge to determine appropriately through summary judgment,
or prior to that. Neither judges nor juries determine which emails companies must answer
nor do judges and juries determine who companies must work with.

This case hinges on a law that says Hale must work with Nieman regardless of his
poor opinion of Hale and Nieman's unprofessional behavior. This law or statute must be
found in Title VII. Hale finds no such law, inside Title VII or outside of Title VII.  It is
plain legal prejudice that demands Hale must work with Nieman at all and a manifest
error of law.


**2. It is Plain Legal Prejudice to Accept an Accusation of Retaliation without the prerequisite EEOC discrimination charge.**

This Court recognizes that Nieman did not attach the prerequisite EEOC
documentation that describes the protected activity with RLI.  Litigation is not  a
protected activity, yet that is what Nieman pleads. As Defendant Hale has pled

> "Even considering Plaintiff's allegations in the light most favorable to
> him, he has failed to include any facts concerning how or why he believes
> he was discriminated against on the basis of his race, color, sex, religion,

national origin, age, or disability. Moreover, Plaintiff does not explain how either Nieman v. Nationwide et. al, 3:2009 CV 03304 (C.D. Ill.) or Nieman v. RLI Corp. et al., 1:2012 CV 01012 (C.D. Ill)) involved his prosecution of discrimination claims based on his race, color, sex, religion, national origin, age, or disability. In short, Plaintiff has not alleged how or why his participation in either of the aforementioned lawsuits is the type of conduct that is protected under Title VII. Since he has not, Plaintiff's Title VII case against Defendants should be dismissed; Plaintiff has failed to state a claim for relief under Title VII." (17 Page ID 319)

Additionally the Complaint falls short in SAYING that it provides, but failing to provide the initial EEOC charge(s) of discrimination.

"On or about October 24, 2011 the Plaintiff was issued Notice of Right to Sue letter in relation to charge number 470-2009-03055. A copy of the right to sue letter is attached as part of Plaintiff's Complaint Exhibit A. As the EEOC controlled the investigation, and as the Plaintiff did not expect that IDHR would do any additional investigation, pursuant to the terms of 775 ILCS 5/7A-102 (A-1) (1) and/or (3) the Plaintiff contacted the IDHR on June 14, 2012 and asked them to issue any required right to sue as to the causes present under the Illinois Human Rights Act." ( 35 Page ID 685)

"He (Nieman) alludes to a Charge Number (470-2009-03055) claiming that the documentation is attached to his Complaint (35 at 3 ¶6). This documentation cannot be found in his attachments and the dates surrounding the charge do not seem to fit the chronology of events of the Complaint." (126 Page ID 2970).

The Court writes

"Plaintiff has not met is heavy burden to establish beyond preadventure that he engaged in a protected activity. Plaintiff equivocates on which lawsuit – the Nationwide Litigation or the RLI Litigation – constitutes the protected activity on which his claim is based, see Dkt. No. 35 at 17, but both suits assert discrimination and retaliation claims and therefore qualify as protected activities, see Davis, 448 F. App'x at 492 (participation in a proceeding under Title VII constitutes a protected activity)" (179 page ID 4166).

21

Hale questions, as a matter of law, if *Davis*, as cited above, actually defines **litigation** as a proceeding under Title VII that constitutes a protected activity.  In considering the RLI litigation mentioned, and information available since the close of Discovery, the allegations against Hale were all denied and the case closed with Prejudice for Defendant Hale.

Rather, these conclusions are based on a manifest error of law, as Case Law demonstrates that the EEOC charge indicating Title VII activity must be submitted in order for Title VII to be a viable charge in a lawsuit. In *JACKAI v. AFFIRMATIVE SERVICES, INC.*, Civil Action No. 3: 13-CV-3594-L (N.D. Tex. Jan. 21, 2015), the court opines:

> "Exhaustion of administrative remedies is "a precondition to seeking this judicial relief." *Pacheco v. Mineta,* 448 F.3d 783, 795 (5th Cir. 2006). A Title VII cause of action may be based "not only on the specific allegations made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations." *Dollis v. Rubin,* 77 F.3d 777, 781 (5th Cir. 1995); see also *Clark v. Kraft Foods, Inc.,* 18 F.3d 1278, 1280 (5th Cir. 1994); *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir. 1970). The scope of the lawsuit thereafter extends no further than the scope of the investigation that can reasonably be expected to grow out of the charge of discrimination. *Fine v. GAF Chem. Corp.,* 995 F.2d 576, 577-78 (5th Cir.1993); *see also Brown v. Peterson*, No. 03-cv-0250, 2006 WL 349805, at *6 (N.D. Tex. February 3, 2006) ("[A] Title VII complaint `may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.'") (citation omitted). "Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation."*McClain v. Lufkin Industries, Inc.,* 519 F.3d 264, 273 (5th Cir. 2008). The court's determination of the proper scope of the lawsuit is driven by the competing policies of promoting the "voluntary settlement of all issues without an action in the

District Court," and expanding the scope of the lawsuit to recognize "the remedial and humanitarian underpinnings of [Title VII]." *Sanchez,* 431 F.2d at 461, 467."

*Jackai*, continued:

> "Here, Plaintiff alleges that he received his right-to-sue letter on June 10, 2013, but he does not attach the letter to his complaint or allege facts describing the scope of the EEOC letter or investigation. This court is unable to determine whether Plaintiff has exhausted his administrative remedies or whether his Complaint exceeds the scope of the EEOC charge. *Cf. Pacheco,* 448 F.3d at 795 (affirming the district court's dismissal under Rule 12(b)(1) because Plaintiff failed to exhaust administrative remedies for his disparate impact claim, as his administrative charge did not even suggest a claim for disparate impact). Based on Plaintiff's pleadings, the court cannot determine the scope of the EEOC charge and therefore cannot determine which of Plaintiff's claims "`can reasonably be expected to grow out of the charge of discrimination.'" *See McClain,* 519 F.3d at 273"

In a like manner, Plaintiff Nieman collects his right-to-sue letter and does not attach it to the complaint or allege facts describing the scope of the alleged Title VII infractions in the RLI circumstance.

This case HINGES on law that says the Plaintiff has made it clear what Title VII charges were made, and on what basis regarding those Hale is accused of retaliation.   It is plain legal prejudice that allowed this case to go forward without any Title VII vocabulary or evidence. It is plain legal prejudice that grants voluntary dismissal without prejudice to the plaintiff.

## 3.  It is Plain Legal Prejudice and a Manifest Error of Law to Continue to Accept the charge of Retaliation by Blacklisting.

The Court references charges of "blacklisting" made against Hale: "Plaintiff also alleges that Hale "improperly communicated information about the Plaintiff's protected

23

conduct to other recruiters" to illegally blacklist him from other employment

opportunities. Id (Dkt 35), ¶ 28. Neir is the only other recruiter referenced in this matter."

:(179 Page ID 4158).  Yet the Court also seemed to set this accusation to rest indicating

that there had been no "blacklisting":

> "It appears from admissible evidence in the record, as well as by Plaintiff's own admissions, *see* Dkt. No. 109 at 4, that Plaintiff has not suffered an adverse employment action (including any adverse employment action that is causally linked to any protected activity alleged in this action) and has not suffered any injury or harm as alleged in Plaintiff's Second Amended Complaint….Specifically, admissible evidence in the record demonstrates that Republic Underwriters Insurance Company ("Republic"), the employer for which Defendant Keith Hale allegedly refused to refer Plaintiff, had no contact or association with Defendants Hale or Insurance Search Group, that Republic interviewed Plaintiff through another recruiter, and that Republic determined not to hire Plaintiff for independent reasons not relevant to this lawsuit. *See* Dkt. No. 101-1 (Exhibits 1 & 8); Dkt. No. 109 at 4 ("As it turns out, the nature of the sworn testimony of Republic (that they did not know about Hale at all and did not know about the Nieman charge or litigation until approximately February 13, 2014) negated the need for much of the proposed questioning.")." (121 page ID 2640-2641)

Hale has already dealt with this frivolous accusation and manifest error of law:

> "The Texas Labor Code, TEX. LAB. CODE § 52.031 and Tex. Rev. Civ. Stat. Ann. Art. 5196(1) & (4), defines "blacklisting" as the publication of the name of an employee who was discharged or who voluntarily left with the intent "to prevent the employee from engaging in or securing employment of any kind with any other person, in either a public or a private capacity." TEX. LAB. CODE ANN. § 52.031(a)(Vernon 2006). A person commits an offense under this provision if the person either blacklists the employee or conspires to prevent a discharged employee from procuring employment. Id. at § 52.031(b). No Texas court has decided whether TEX. LAB. CODE § 52.031 provides for a private cause of action, so it is unclear whether a private individual such as Plaintiff can sue under the statute. See Brim v. Exxon Mobile Pipeline Co., 213 Fed. App'x 303, 305 (5th Cir. 2007). Even assuming for purposes of this case that a private cause of action exists, Plaintiff has not plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. The facts actually refute the allegation of blacklisting. (See Dkt. No. 109 at 4: "As it turns out, the nature of the sworn testimony of Republic (that they did not know about Hale at all and did

not know about the Nieman charge or litigation until approximately February 13, 2014)". Plaintiff Nieman, likewise, has no facts to back his allegation that Hale had "blacklisted" Nieman within the National Insurance Recruiters Association, as the recruiter involved with Republic who represented Nieman is a member of NIRA. See Dkt. No. 35 at 14 ¶28."
(123 Page ID 2866-2867)

Hale further explains,

"In attempting to create a scenario ex nihilo that would show retaliation by Hale, Nieman twenty-four (24) times uses the terms "blacklist", "blacklisted", or "blacklisting in the Brief. Completely ignoring applicable legal definitions (TEX LA §52.301), Nieman continues to misapply "blacklisting" improperly out of context. Hale clarified "blacklisting" and its proper context (TEX. LA. CODE ANN. §52.031) he references his argument found there. (123 at 8 & 9). Perhaps Nieman believes if he twists the use of "blacklisting" enough (24 times), no matter how inaccurate or out of context, it will be believed. No legal or factual arguments or evidence that help Nieman's Complaint are to be found in his extensive effort to tie his contorted use of "blacklisting" to the alleged adverse employment action of retaliation, an action that Nieman has admitted did not occur. See McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007)." (126 Page ID 2971)

Then Nieman, admitting that Hale did not "blacklist" Nieman to Paul Neir, Nieman then shifts his argument that the same event transforming it to Hale of NOT telling Neir about Nieman's litigation(s). "There is certainly other adverse evidence as to Hale's character and conduct. Neir admitted that Hale withheld information regarding Nieman and the litigation relating to Neir and Republic until February 15, 2014. (Neir Dep. at Appx. 109, Dep. at pg. 53 at 25 et seq.)"(122 Page ID 2652). The Court has adopted this argument in the Report. [179].  Hale has addressed his concerns thoroughly in his response to the Report. [183].

It is a manifest error of law 1) to falsely accuse Hale of TELLING Neir about Nieman's litigation activity which Nieman KNOWS is false, and then create a new

25

accusation of the same event now re-naming it "withholding information from Republic and Neir. The Court rules against Hale based upon this bulverism in its Report.

It is Plain Legal Prejudice and a manifest error of law that this "blacklist" allegation of retaliation lives on, has been believed by the court, and apparently stood as an issue for jury trial. Leaving such accusations open for "a second lawsuit" constitutes plain legal prejudice.  Perhaps the court, in the interest of justice, needs to go through each of Nieman's false allegations and LIST which may not be refiled.  Grant *sua sponte* summary judgment with prejudice.


**4. There has been Plain legal prejudice against the Defendant with an imbalance between finality and justice.**

When considering a motion to alter or **amend judgment**, "[t]he court must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). *King v. LIFE SCHOOL*, Civil Action No. 3: 10-CV-0042-BH (N.D. Tex. May 21, 2012).

In the instant case, the Plaintiff and the Judge are all of a sudden anxious to cause finality, but seem to neglect the need to render just decisions on the basis of all the facts.  The Court, in setting trial, stated "Regarding the trial of this case and Plaintiff's noted conflict, this case was filed July 19, 2012, and will soon be three years old. As this case will be three years old in July 2015, it must be tried before the end of September 2015 or it will be considered "old' for statistical purposes and included on a national report of "old" cases." (186 Page ID 4264) And "This case will be three years old July 19, 2015, and the court's trial docket between now and

26

May 2016 is currently full. Accordingly, if this case is not tried in August 2015 as scheduled, the resolution of this litigation will likely be delayed unnecessarily for another year." (191 Page ID 4312).  The Plaintiff, having inconvenienced the Defendant now for over 3 years in this current litigation and in a number of other venues, now wants to walk away with a right to come back as if nothing has ever happened, as if the Defendant has not been wronged.  This demonstrates legal prejudice against the Defendant, favoring, instead the convenience and false claims of the Plaintiff.

It appears that the Plaintiff was right during his deposition when he said, "Justice?...If you are under the impression in this case that you are going to trial and win and get justice I think it just shows that you have no idea what you are doing." (166 App'x 13 and 14). These are the words of the author of the Second Amended Complaint.  These are the words of the Plaintiff who has now been granted voluntary dismissal without prejudice.

## **CONCLUSION**

WHEREFORE, PREMISES CONSIDERED, for the reasons set forth herein,the Defendant requests sua sponte summary jusgment with prejudice, with Plaintiff paying all legal fees incurred in this action and compensation for all pro se work expended by the Defendant.

Respectfully Submitted this July 16, 2015

/s/ Keith Hale

Keith Hale, *pro se*
1064 West Winding Creek Drive
Grapevine, TX 76051
817 481 5000
keith@insearchgroup.com

## CERTIFICATE OF SERVICE

Keith Hale, *pro se*, certifies that on this July 16 2015 he electronically filed the foregoing pleading and attachments with the Clerk of the Court for the Northern District of Texas, Dallas, by way of the Court's ECF/CM System.

Plaintiff Jason Nieman appears to have secured ECF/CM access and should receive copies of this filing and attachments via email.  Delivery of the notice of electronic filing that is automatically generated by ECF constitutes service under Fed. R. Civ. P. 5(b)(2)(E) and fulfills LR 5.1.d.

/s/ Keith Hale
Keith Hale
1064 W Winding Creek Drive
Grapevine, TX 76051
817 481 5000
keith@insearchgroup.com